**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 07-CR-30072 |
| | ) | |
| **WILLIAM L. PROCTOR,** | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER AND OPINION**

**SUE E. MYERSCOUGH, U.S. District Judge:**

Before the Court is Defendant William Proctor's *pro se* Motion for Compassionate Release (d/e 61) and supplemental motion (d/e 69) requesting a reduction in his term of imprisonment pursuant to 18 U.S.C. § 3582(c)(1)(A). For the reasons set forth below, the motion is DENIED.

**I. BACKGROUND**

On October 15, 2007, Defendant was sentenced to 141 months' imprisonment followed by five years of supervised release for aggravated bank robbery and carrying and using a firearm during a crime of violence. After being released and beginning his term of supervised release, Defendant's supervised release was

revoked on October 19, 2018. He was sentenced to 12 months' imprisonment, followed by three years of supervised release. He recommenced his supervised release on October 16, 2019.

On August 7, 2020, however, a petition for summons was filed after Defendant repeatedly possessed and used cocaine and marijuana, failed to successfully complete substance abuse counseling, and failed to report to probation as directed. On November 19, 2020, Defendant waived his right to a revocation hearing and conceded that the Court could make a finding that he violated his supervised release. The Court revoked Defendant's supervised release and sentenced him to 20 months' imprisonment, followed by a 3-year term of supervised release. Defendant is currently serving his sentence at FCI Forrest City Medium and has a projected release date of May 4, 2022.

On June 21, 2021, Defendant filed a pro se motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). See d/e 61. Defendant's pro se motion seeks compassionate release due to his health issues and the COVID-19 pandemic. The Federal Public Defender's Office was appointed to represent Defendant, but counsel filed a Notice of Intent Not to File Amended Motion for

Compassionate Release on June 24, 2021.  See d/e 62.  Defense counsel stated that Defendant's pro se motion fully and fairly sets forth all possible arguments in support of his motion for compassionate release and supports those arguments with documentary evidence.  Id.

On June 28, 2021, the Government filed a response opposing Defendant's motion.  See d/e 66.  On July 1, 2021, the Court ordered the Government to submit supplemental briefing clarifying the treatment being provided for Defendant's medical condition.  The Government filed its supplemental brief on July 8, 2021.  See d/e 68.  On July 12, 2021, Defendant filed a supplemental pro se motion for compassionate release, d/e 69, which further elaborated on the grounds raised in his original pro se motion.

The United States Probation Office has reviewed Defendant's proposed release plan and finds that it is suitable.  See Probation Memorandum (d/e 65).

## II. ANALYSIS

As a general matter, the Court is statutorily prohibited from modifying a term of imprisonment once it has been imposed.  See 18 U.S.C. § 3582(c).  However, several statutory exceptions exist,

one of which allows the Court to grant a defendant compassionate release if certain requirements are met.  See 18 U.S.C. § 3582(c)(1)(A).

Section 603(b)(1) of the First Step Act amended the statutory language at 18 U.S.C. § 3582(c)(1)(A).  See First Step Act of 2018, Pub. L. No. 115-391, 132 Stat 5194.  Prior to the First Step Act, the Court could grant a defendant compassionate release only if the Director of the BOP filed a motion seeking that relief.  With the enactment of the First Step Act, 18 U.S.C. § 3582(c)(1)(A) now allows an inmate to file with the Court a motion for compassionate release, but only after exhausting administrative review of a BOP denial of the inmate's request for BOP to file a motion or waiting 30 days from when the inmate made his or her request, whichever is earlier.  The statute now provides:

> The court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the

factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

(i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

The Seventh Circuit has held that the exhaustion requirement of 18 U.S.C. § 3582(c)(1)(A) "is a mandatory claim-processing rule and therefore must be enforced when properly invoked." United States v. Sanford, 986 F.3d 779, 782 (7th Cir. 2021). An inmate must exhaust all grounds on which he seeks to base his motion for compassionate release in order to satisfy the exhaustion requirement. United States v. Williams, 987 F.3d 700, 704 (7th Cir. 2021) ("The exhaustion requirement is designed to allow the Bureau to bring 'a motion on the defendant's behalf,' before he moves on his own behalf. And the Bureau cannot determine whether it should bring a compassionate-release motion if an inmate does not explain in his request the ground justifying his release." (quoting § 3582(c)(1)(A)).

In this case, Defendant states that he submitted a request to the warden of his facility on April 5, 2021, which is more than 30

days prior to his filing of his *pro se* motion.  See d/e 61, p. 3.  The Government did not raise exhaustion in its Response.  See Response, d/e 62.  As such, the argument is waived.

However, having considered the applicable factors set forth in 18 U.S.C. § 3553(a), the Court finds that Defendant has not satisfied the requirements for compassionate release.  The spread of COVID-19 has presented extraordinary and unprecedented challenges for the country and poses a serious issue for prisons.  Due to the infectious nature of the virus, the Centers for Disease Control and Prevention (CDC) and state governments have advised individuals to practice good hygiene, social distancing, and isolation.  Social distancing can be difficult for individuals living in a prison.  However, COVID-19 appears to be under control at FCI Forest City Medium, as there are no active inmate cases of COVID-19, and only one active staff member case.  See COVID-19 Cases, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/ (last accessed July 21, 2021).

Defendant argues that the COVID-19 pandemic combined with his medical conditions qualify as extraordinary and compelling circumstances.  Defendant is a 37-year old male with a medical

history of Asthma, ADHD, Anxiety Attacks, and Polycythemia Vera. While the CDC considers moderate-to-severe asthma to constitute a risk factor for COVID-19, see People with Certain Medical Conditions, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last accessed July 21, 2021), Defendant states that his asthma is well controlled. Mot. at 14 (d/e 61). Moreover, his medical records indicate that he is prescribed an inhaler and it is taken only as needed. See BOP Medical Records at p. 4 (d/e 66).

    Defendant's polycythemia vera, however, does place him at an increased risk of serious illness or death from COVID-19. The CDC has taken the position that cancer patients are at an increased risk of death and serious illness from COVID-19. See People with Certain Medical Conditions, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last accessed July 20, 2021). As polycythemia vera is a rare type of blood cancer, see Polycythemia Vera, https://www.mayoclinic.org/diseases-conditions/polycythemia-

vera/symptoms-causes/syc-20355850#:~:text=Polycythemia%20vera%20(pol%2De%2D,problems%2C%20such%20as%20blood%20clots (last accessed July 21, 2021), the Court finds that Defendant's diagnosis of polycythemia vera places him at an increased risk of serious illness or death should be contract COVID-19.  See also, Ask The Experts About COVID-19 and Myeloproliferative Neoplasms (MF - PV - ET), June 22, 2021, https://news.cancerconnect.com/myeloproliferative-neoplasms-mpn/ask-the-experts-about-covid-19-and-myeloproliferative-neoplasms-mf-pv-et (last accessed July 21, 2021) (indicating early research showed blood cancer patients who contracted COVID-19 had a 28 percent death rate, but that the death rate now appears to be getting lower than initially reported). However, Defendant has been vaccinated against COVID-19, so his risk of infection and serious illness or death is reduced.  See BOP Medical Records at p. 102 (d/e 66).  But see, Ask The Experts About COVID-19 and Myeloproliferative Neoplasms (MF - PV - ET), June 22, 2021, https://news.cancerconnect.com/myeloproliferative-neoplasms-mpn/ask-the-experts-about-covid-19-and-myeloproliferative-

neoplasms-mf-pv-et (last accessed July 21, 2021) (noting that COVID-19 vaccine may be less effective at creating immune response in individuals with cancer).

Defendant also claims that due to the COVID-19 pandemic, the BOP is not properly treating his serious medical condition. His condition is not life-threatening so long as he gets proper treatment. His supplemental briefing also highlights that a lockdown was in effect at the facility from June 27, 2021 to July 6, 2021, resulting in the Defendant being unable to go to the medical unit. See Supplemental Motion at 1 (d/e 69). Defendant is treated for his polycythemia vera with frequent phlebotomies (blood withdrawals), as well as medication. Defendant argues that he is not getting needed phlebotomy and he has not been placed in an adequate facility.[1] The medical records submitted by the BOP indicate that

---

[1] The Government argues that Defendant Proctor was not seeking treatment for his blood cancer while he was not incarcerated. The Government relies on a statement from BOP medical records where Defendant told providers that he did not seek treatment after being released in 2017. See BOP Medical Records at p.16. However, the Court finds this statement to be contradicted in other records. Defendant was receiving treatment while incarcerated from May 2018 to October 2019. Defendant's last period of not being incarcerated was between October 2019 and August 2020. The medical records submitted at the time of sentencing include a letter verifying that he attended a medical appointment for his condition in December 2019 and that he had received a phlebotomy about a month prior. See Def. Commentaries, Ex. B (d/e 56-2).

blood work to determine his Hemoglobin/Hematocrit levels was last performed on March 23, 2021. See BOP Medical Records at p. 117 (d/e 66). His Hemoglobin/Hematocrit levels determine whether a phlebotomy is needed. In the Government's supplemental response, the Government stated that it confirmed with Defendant's doctor that these levels were within normal levels and a phlebotomy is not needed at this time. See Gov't Supplemental Brief at p. 2 (d/e 68). Additional blood work was scheduled to be taken on July 8, 2021, and results are pending. Id. BOP Medical Records also indicate that some of the symptoms Defendant was experiencing may be related to drug withdrawal. See BOP Medical Records at p.3 (d/e 66). Based on the Government's supplemental response, the Court finds that Defendant is being given adequate treatment for his serious condition.

While the Court finds that Defendant has a serious medical condition that puts him at an increased risk of serious illness or death from COVID-19, the facility is not experiencing a wide-spread outbreak of COVID-19. Defendant is now vaccinated, which reduces his likelihood of contracting COVID-19, as well as his likelihood of serious illness or death if he did contract COVID-19.

Moreover, despite the challenges of the COVID-19 pandemic, the Court finds that Defendant is receiving adequate treatment for his condition.  At this time, the Court, taking all the relevant facts into account, finds that Defendant has not established that there exist extraordinary and compelling reasons that warrant a reduction of imprisonment.

In addition, the Court finds that Defendant is not entitled to compassionate release after reconsideration of the § 3553(a) factors. Defendant is currently serving a revocation sentence for his second revocation on this case matter.  Defendant has been given multiple opportunities to reform himself.  One week after returning to supervised release after his first revocation on this matter, he tested positive for cocaine.  Moreover, Defendant has already picked up two disciplinary sanctions during his eight months at the BOP serving this sentence.  One of these disciplinary sanctions involved assaulting another inmate on April 25, 2021.  The Court finds that Defendant continues to be a danger to the community and his imprisonment sentence is necessary to deter him from future violations and criminal activity.

## III. CONCLUSION

For the reasons set forth above, the Court DENIES Defendant Proctor's pro se motion for compassionate release and supplemental motion (d/e 61, 69).  This ruling does not preclude Defendant from filing another motion for compassionate release in the future if circumstances change.  The Clerk is DIRECTED to send a copy of this Opinion to FTC Forest City Medium.

ENTER:  July 22, 2021

/s/ Sue E. Myerscough
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE